Filed 4/19/16  In re Am. G. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re AM. G. et al., Persons Coming Under the Juvenile Court Law. | C080243 |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>AMANDA W.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. 13JVSQ2971901, 14JVSQ3000401) |

Amanda W., mother of the minors, appeals from orders of the juvenile court denying her petition for modification and terminating her parental rights.  (Welf. & Inst. Code,[1] §§ 366.26, 388, 395.)  Mother contends the juvenile court erred in denying her

---

[1]     Further undesignated statutory references are to the Welfare and Institutions Code.

1

petition for modification because she showed both changed circumstances and that the proposed modification would be in the minors' best interests. Mother argues that, due to the error, the order terminating her parental rights should be reversed and the minors returned to her care. We affirm.

## FACTS

The case began in Placer County in February 2013 with a petition alleging that one-month-old Am. G. was at risk because mother had a 12-year history of methamphetamine abuse and Am. G. tested positive for methamphetamine at birth. The juvenile court in Placer County sustained the petition without removing Am. G. and transferred the case to Shasta County for disposition. A subsequent (§ 342) petition in July 2013 alleged that both parents tested positive for methamphetamine and the Shasta County Health and Human Services Agency (Agency) recommended removing Am. G. from parental custody. Am. G. was detained in July 2013. The juvenile court sustained the subsequent petition, ordered reunification services for the parents, and set a six-month review hearing.

The review report in January 2014 recommended extending services to mother, who had been in inpatient treatment since October 2013, and whose overall compliance with the reunification plan was improving. Mother had admitted daily use of methamphetamine from the time Am. G. was removed until mother entered residential treatment. Although the court had concerns, it adopted the Agency's recommendation.

In February 2014, mother gave birth to Aa. G. The Agency filed a nondetaining petition alleging mother's prior drug use and recommended that Aa. G. remain with mother in the residential drug treatment program. In May 2014, the court sustained the petition and ordered family maintenance services for mother. Mother was excluded from the program for rule breaking but the court declined to detain Aa. G. The Agency recommended continuing family maintenance services.

2

In June 2014, Am. G. was placed with mother and Aa. G. in a trial visit because mother continued to be successful in the residential drug treatment program. However, Am. G. was returned to her original placement when mother was excluded from the program.

In August 2014 the Agency continued to recommend family maintenance services for both minors although mother was not in the structured program she needed and had a history of periods of sobriety followed by relapses. Mother was transient and not following through with her program but continued to test negative. At Am. G.'s status review hearing, the juvenile court gave the Agency discretion for renewed trial home visits since mother represented she was in a sober living program. By September 2014 both minors were placed with mother in the sober living facility under family maintenance.

In October 2014, the Agency filed a supplemental (§ 387) petition to remove both minors, now 21 months and seven months old, from mother's custody because mother admitted she had relapsed into methamphetamine use, was not compliant with her case plan, and was not working with the Agency. Mother believed the minors were not at risk because she used methamphetamine after the minors went to school. The court ordered the minors detained.

The jurisdiction/disposition report in November 2014 recommended termination of family maintenance services and setting a section 366.26 hearing. The report reviewed the services and history of relapses that resulted in the minors' removal in October 2014. To date, mother participated in two parenting classes, completed a drug treatment program at Progress House in 2013, did not comply with the Perinatal Program in 2013, was dismissed from the New Life Recovery Program in July 2014, participated in substance abuse counseling at House of Hope, was in a sober living facility from August to October of 2014, applied to Visions of the Cross in August 2014 but did not participate, began Empire Outpatient Treatment in August 2014 and restarted the

3

program in September 2014.  Mother also received counseling and completed two child safety plans in 2014 and began Safe Care in September 2014 to learn parent-child interaction and skills in home safety but evaded services and did not complete the program due to removal of the minors.  Mother tested positive for methamphetamine twice in early October 2014.  Aa. G. had a hair follicle test in October 2014 that tested positive for methamphetamine.  The minors were placed together and appeared to have a strong sibling bond.  The minors visited mother and enjoyed visits although Am. G.'s tantrums were more severe after visits.

At the November 2014 jurisdictional/dispositional hearing on the section 387 petition, mother presented documents showing she had attended Narcotics Anonymous from October 24, 2014 through November 23, 2014, and had continued outpatient services during that period.  The hearing was continued to January 2015.

The Agency addendum reports stated mother was continuing to test negative and participate in outpatient drug treatment.  Mother visited regularly although there were concerns that she played roughly with the minors.  The Agency was concerned because mother had done best in a structured environment but was now in an apartment with no restrictions.  Mother came to visits without food or supplies and asked the foster parents to provide food.  The visit supervisor has had to redirect mother during visits to safely care for the minors and mother, despite parenting classes, struggled to provide adequate care for the minors during visits.

At the hearing on the section 387 petition in January 2015, mother presented evidence of her positive progress following removal of the minors.  The court sustained the section 387 petition, terminated both reunification and family maintenance services, bypassed reunification services for Aa. G., ordered supervised visits to be provided a minimum of monthly, and set a section 366.26 hearing.

4

In May 2015, mother requested a bonding assessment. Mother also filed a section 388 petition for modification seeking return of the minors under a family maintenance plan alleging she had continued to participate in an outpatient drug treatment program and random testing. She also alleged she was attending 12-step meetings and visited regularly. Mother attached various documents to her petition that reflected her program participation from February to April 2015.

The assessment for the section 366.26 hearing recommended termination of parental rights with a permanent plan of adoption. Neither minor had any characteristics that would make them difficult to place, their current caretakers were willing to adopt them and they were considered generally adoptable. Mother visited regularly and Am. G. occasionally had a negative response to visits.

An addendum stated that mother continued to visit and reported that she was continuing in drug treatment. The Agency was concerned that mother had participated in over 18 months of services when she relapsed and Aa. G. had also tested positive for methamphetamine. Am. G. had been in foster care 20 of the 26 months the case had been pending.

A second addendum filed in September 2015 provided a copy of mother's bonding study. After observing the minors with the foster parents and with mother, Dr. J. Reid McKellar concluded the minors were clearly bonded to mother and the bond was positive and nurturing. However, the minors had been nurtured by others, had a strong capacity to attach and were well-equipped to handle the loss of an attachment figure. Because the minors were young and resilient and had a growing bond to the current caretakers, Dr. McKellar was of the opinion that each would be able to recover from the loss of the bond to mother without detrimental impact.

At the combined hearing in September 2015 on mother's petition for modification and the selection of a permanent plan, mother testified she continued to attend 12-step meetings with her sponsor but had not kept the sign-in cards from the meetings. Mother

5

said she continued the outpatient treatment program because she needed to be held accountable.

The court granted that there was, perhaps, some slight change in circumstances but the question was the extent of mother's progress and, due to the lack of evidence, the court was unable to determine whether she had maintained her sobriety. The court observed that mother was a long-time drug user who was provided multiple services and had multiple relapses, including a relapse after the minors were in her care. The court concluded the minors deserved permanency and denied the petition for modification. The court adopted the Agency's recommended findings and orders terminating parental rights and selecting a permanent plan of adoption for the minors.

## DISCUSSION

Mother contends the juvenile court erred in denying her petition for modification because she had shown both changed circumstances and that the modification was in the minors' best interests. We disagree.

A parent may bring a petition for modification of any order of the juvenile court pursuant to section 388 based on new evidence or a showing of changed circumstances.[2] "The parent requesting the change of order has the burden of establishing that the change is justified. [Citation.] The standard of proof is a preponderance of the evidence." (*In re Michael B.* (1992) 8 Cal.App.4th 1698, 1703.) Determination of a petition to modify is

---

[2]     Section 388 provides, in part: "Any parent . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court." (§ 388, subd. (a)(1).) The court must set a hearing if "it appears that the best interests of the child . . . may be promoted by the proposed change of order . . . ." (§ 388, subd. (d).)

committed to the sound discretion of the juvenile court and, absent a showing of a clear abuse of discretion, the decision of the juvenile court must be upheld. (*In re Stephanie M*. (1994) 7 Cal.4th 295, 318-319; *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.) The best interests of the child are of paramount consideration when the petition is brought after termination of reunification services. (*In re Stephanie M*., at p. 317.) In assessing the best interests of the child, the juvenile court looks not to the parent's interests in reunification but to the needs of the child for permanence and stability. (*Ibid*.; *In re Marilyn H*. (1993) 5 Cal.4th 295, 309.)

The juvenile court tepidly assumed for the purpose of ruling that mother had shown changed circumstances, although observing that the evidence of ongoing sobriety since the petition for modification was filed was only mother's testimony unsupported by documentary evidence which she had thrown away. However, in viewing mother's history of significant long-term methamphetamine use and her relapses, even when the minors were in her care, which ultimately resulted in the youngest child also testing positive for methamphetamine, the court could not find that granting the modification was in the minors' best interests.

All services, both reunification and family maintenance, had been terminated. The minors' interests were in permanence and stability. While both minors evidently had a positive bond with mother, they were also young and able to attach to another caregiver. Mother had not, despite extensive services, been able to offer any real hope of permanency for the minors as she regularly relapsed into methamphetamine use and was demonstrably unable to assess the risk she posed to the physical health and well-being of the minors. The juvenile court did not abuse its discretion in denying the petition for modification.

## DISPOSITION

The orders of the juvenile court are affirmed.

/s/
Robie, Acting P. J.

We concur:

/s/
Mauro, J.

/s/
Duarte, J.

8